UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN CORNELL, Individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| COUNT BASIE THEATER, INC., A New Jersey | : | |
| Non-Profit Corporation, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **COMPLAINT**
(Injunctive Relief Demanded)

Plaintiff, STEPHEN CORNELL, Individually, on his behalf and on behalf of all other individuals similarly situated, (referred to hereinafter as "Plaintiff"), hereby sues Defendant, COUNT BASIE THEATER, INC., A New Jersey Non-Profit Corporation, (referred to hereinafter as "Defendant"), for Injunctive Relief, compensatory damages, punitive damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination (N.J.S.A. 10:5-12) ("NJLAD").

1.      Plaintiff  is a New Jersey resident, lives in Atlantic County, and is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Plaintiff is a quadriplegic, is unable to engage in the major life activity of walking, and must ambulate in a wheelchair. Plaintiff has limited use of his hands and is substantially limited in the major life activity of performing manual tasks.

2.      Plaintiff is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA.

3.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that Defendant owns, operates, leases or leases to is a theater known as "The Count Basie Theater for the Arts" (referred to hereinafter as the "The Count Basie Theater"), 99 Monmouth St, Red Bank, NJ 07701, and is located in the County of Monmouth, (hereinafter "Property").

4.      Venue is properly located in the DISTRICT OF NEW JERSEY because venue lies in the judicial district of the property situs.  Defendant's property is located in and does business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.  *See also* 28 U.S.C. § 2201 and § 2202

6.      Plaintiff has visited the property which forms the basis of this lawsuit and plans to return to the property to avail himself of the goods and services offered to the public at the property, and to determine whether the property has been made ADA compliant.  Plaintiff has encountered architectural barriers at the subject property which discriminate against him on the basis of his disability and have endangered his safety.  These barriers also prevent Plaintiff from returning to the property to enjoy the goods and services available to the public.

7.      Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.  Plaintiff is deterred from, and is denied the opportunity to participate and benefit from the goods, services, privileges, advantages, facilities and  accommodations at Defendant's property equal to that afforded to other individuals.  Plaintiff is aware that it would be a futile gesture to attempt to visit Defendant's property if he wishes to do so free of discrimination.

8.      Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this property as described, but not necessarily limited to, the allegations in paragraphs 10 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant.  Plaintiff desires to visit the Count Basie Theater not only to avail himself of the goods and services available at the property, but also to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

9.      Defendant have discriminated against Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the subject property, as prohibited by 42 U.S.C. § 12182 *et seq*.

10.     Defendant have discriminated, and are continuing to discriminate, against Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant have 10 or fewer employees and gross receipts of $500,000 or less).

11.     Defendant does not offer accessible seating on its Internet website. Instead, disabled patrons are directed to contact the box office by telephone to select and purchase seats for upcoming events.

12.     Defendant offers certain seats designated as accessible seating in Rows A, Q, and DD of the theater.  Once a disabled wheelchair patron selects and purchases a ticket, Defendant makes arrangements for its event staff to remove two physical seats prior to the event to provide space for the patron's wheelchair.

13.     Plaintiff purchased a ticket for The Last Waltz Band concert scheduled for January 27, 2017.  Defendant assigned Plaintiff an accessible seating location and assured him that the physical seats would be removed prior to the concert.

14.     When Plaintiff arrived for The Last Waltz Band concert on January 27, 2017, he discovered that Defendant had failed to remove the physical seats and there was nowhere for him to place his wheelchair.

15.     Plaintiff complained to Defendant's event staff and the seats were removed.

16.     Plaintiff purchased two tickets for the Howie Mandel performance scheduled for April 12, 2018.  Plaintiff purchased one ticket for himself and one for a companion. The Count Basie Theater assigned Plaintiff specific seats in Row A (the first row) and assured him that the physical seats would be removed prior to the concert to provide space for his wheelchair.

17.     When Plaintiff arrived for the Howie Mandel performance on April 12, 2018, he discovered that Defendant had again failed to remove the physical seats and there was nowhere for him to place his wheelchair.

18.     Plaintiff complained to Defendant's event staff, but Defendant failed to remove the seat.  Instead, Defendant instructed Plaintiff to locate his wheelchair in the inner aisle,

adjacent to the seats he had purchased.  Plaintiff was surprised and disappointed by Defendant's failure because there was still plenty of time to remove the seats prior to the start of the show.

19.     Plaintiff expressed reservations about being placed in the aisle, but Defendant's event staff member assured him that he could remain there and would not be bothered.  Since Plaintiff's vantage point was not substantially affected, he complied with Defendant's instructions.

20.     Howie Mandel appeared onstage and began his performance. Plaintiff sat in his wheelchair in the aisle, as he had been instructed, enjoying the show.

21.     At some point thereafter, Defendant's House Manager, Cory Minervini, approached Plaintiff and advised him that he needed to relocate his wheelchair because he could not remain in the aisle.

22.     Plaintiff explained that he had nowhere to go because Defendant had failed to remove the seats prior to the show. Plaintiff further explained that Defendant had explicitly instructed him to place his wheelchair in the aisle for the performance, which was now well underway.

23.     Minervini became irate and loudly accused Plaintiff of causing a disturbance and interrupting the show.  Minervini's voice was loud enough to be heard by those seated in Plaintiff's immediate vicinity and caused Plaintiff extreme embarrassment and humiliation.

24.     Minervini refused to accommodate Plaintiff and continued to chastise him loudly and publicly for attempting to exercise his rights.  Several other patrons seated nearby who were unaware of Defendant's failure to remove Plaintiff's seat began commenting on the situation, further embarrassing Plaintiff.

25.     Minervini then ordered Plaintiff to move his wheelchair to the far end of Row A where his vantage point would be at an extreme, undesirable angle to the stage.

26.     Plaintiff protested, but ultimately concluded that he had no choice but to comply.

27.     Plaintiff's view of the show was severely compromised because, instead of being right in front of the stage, he was now shunted off to the far side.  Plaintiff was forced to remain at the far end of Row A for the duration of the performance, his enjoyment of the show ruined.

28.     Defendant's event staff interfered with Plaintiff's efforts to exercise his rights under the ADA on April 12, 2018 by coercing, threatening, and intimidating him, and by continually interfering with his attempts to occupy the accessible seats he had purchased through Defendant's box office.

29.     Plaintiff believes and avers that Defendant's discriminatory actions against him at the Howie Mandel performance on April 12, 2018 were in retaliation for his protected activity at The Last Waltz Band concert on January 27, 2017.

30.     Plaintiff desires to visit The Count Basie Theater in the future not only to avail himself of the goods and services available at the property, but also to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.  Plaintiff intends to visit The Count Basie Theater to attend the David Crosby concert scheduled for June 10, 2019.

31.     The discriminatory violations described above are not an exclusive list of Defendant's ADA  violations.  Plaintiff requires an inspection of Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA  and all of the barriers to access.  Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of

Defendant's buildings and facilities, and have otherwise been discriminated against and damaged by Defendant because of Defendant's ADA violations, as set forth above.  Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.   In order to remedy this discriminatory situation, Plaintiff requires an inspection of Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## DISABILITY DISCRIMINATION - TITLE III OF ADA

32.    Defendant has discriminated against Plaintiff by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 *et seq.* and 28 CFR 36.302 *et seq.*  Furthermore, Defendant continues to discriminate against Plaintiff and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

33.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

34.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992.  *See* 28 CFR 36.304(a).  In the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then Defendant are required to ensure, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs.  *See* 28 CFR 36.402.  Finally, if Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

35.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant have 10 or fewer employees and gross receipts of $500,000 or less).  All other conditions precedent have been met by Plaintiff or waived by Defendant.

36.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter The Count Basie Theater to make those facilities readily accessible and useable to Plaintiff and all other persons with disabilities as defined by the ADA, or by closing the facility until such time as Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that Defendant at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

b.      Injunctive relief against Defendant, including an Order

(i)  requiring Defendant to make all readily achievable alterations to the Property and to the facility operated thereon so that the Property and such facility are made readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(ii)  requiring Defendant to make reasonable modifications in policies, practices or procedures as are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

(iii)  requiring Defendant to take such steps as are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and

(iv) prohibiting Defendant from perpetuating any acts and practices which result in the exclusion, denial of service to or discriminatory treatment of individuals with disabilities.

c.      An award of attorneys' fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
## RETALIATION - TITLE III OF ADA

37.     Plaintiff incorporates herein by reference paragraphs 1 through 36 above, as if set forth herein in their entirety.

38.     The ADA specifically prohibits retaliation, as follows:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203(a).

39.    Plaintiff engaged in activity statutorily protected by the ADA by asking Defendant to remove the seats that he had purchased for The Last Waltz Band concert at The Count Basie Theater on January 27, 2017 .

40.    Plaintiff again engaged in activity statutorily protected by the ADA by asking Defendant to remove the seats that he had purchased for the Howie Mandel performance on April 12, 2018.

41.    When Plaintiff attempted to access and utilize the accessible seating he purchased for the Howie Mandel performance on April 12, 2018, Defendant retaliated against Plaintiff by refusing to remove the purchased seats, refusing to allow him to remain in the aisle next to the seats Defendant failed to remove, by relocating Plaintiff to the far outer aisle at the side of the stage, and by verbally harassing, coercing and threatening Plaintiff in the immediate presence of other members of the audience.

42.    Defendant was motivated by an intent to retaliate, as demonstrated directly by Minervini's outrageous and unlawful behavior towards Plaintiff on April 12, 2018.

43.    Defendant's retaliatory motivation can also be inferred from the relatively short time period that elapsed between Plaintiff's exercise of protected activity on January 27, 2017 and Defendant's unconscionable treatment of Plaintiff on April 12, 2018.

44.    As a result of the aforementioned retaliation, Plaintiff has sustained emotional distress, mental anguish, suffering, humiliation and other injuries.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that Defendant at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

b.      Injunctive relief against Defendant, including an Order

(i)  requiring Defendant to make all readily achievable alterations to the Property and to the facility operated thereon so that the Property and such facility are made readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(ii)  requiring Defendant to make reasonable modifications in policies, practices or procedures as are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

(iii)  requiring Defendant to take such steps as are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and

(iv) prohibiting Defendant from perpetuating any acts and practices which result in the exclusion, denial of service to or discriminatory treatment of individuals with disabilities.

c.      An award of attorneys' fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## COUNT III
## INTERFERENCE - TITLE III OF ADA

45.     Plaintiff incorporates herein by reference paragraphs 1 through 44 above, as if set forth herein in their entirety.

46.   The ADA specifically prohibits interference, coercion, or intimidation, as follows:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203(a).

47.   Plaintiff engaged in activity statutorily protected by the ADA by asking Defendant to remove the seats that he had purchased for The Last Waltz Band concert at The Count Basie Theater on January 27, 2017 .

48.   Plaintiff again engaged in activity statutorily protected by the ADA by asking Defendant to remove the seats that he had purchased for the Howie Mandel performance on April 12, 2018.

49.   When Plaintiff attempted to access and utilize the accessible seating he purchased for the Howie Mandel performance on April 12, 2018, Defendant interfered with Plaintiff's exercise of his statutorily protected rights by refusing to remove the purchased seats, refusing to allow him to remain in the aisle next to the seats Defendant refused to remove, by coercing Plaintiff to relocate his wheelchair to the far outer aisle at the side of the stage, and by verbally harassing and threatening Plaintiff in the immediate presence of other members of the audience.

50.   Defendant was directly motivated by discriminatory animus, as demonstrated directly by Minervini's outrageous and unlawful behavior towards Plaintiff on April 12, 2018.

51.   Defendant's intent to interfere can also be inferred from the relatively short time period that elapsed between Plaintiff's exercise of protected activity on January 27, 2017 and Defendant's unconscionable treatment of Plaintiff on April 12, 2018.

52.     As a result of the aforementioned interference, Plaintiff has sustained emotional distress, mental anguish, suffering, humiliation and other injuries.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that Defendant at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

b.      Injunctive relief against Defendant, including an Order

(i)  requiring Defendant to make all readily achievable alterations to the Property and to the facility operated thereon so that the Property and such facility are made readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(ii)  requiring Defendant to make reasonable modifications in policies, practices or procedures as are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

(iii)  requiring Defendant to take such steps as are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and

(iv) prohibiting Defendant from perpetuating any acts and practices which result in the exclusion, denial of service to or discriminatory treatment of individuals with disabilities.

c.      An award of attorneys' fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## COUNT IV
## DISABILITY DISCRIMINATION - NJLAD

53.     Plaintiff incorporates herein by reference paragraphs 1 through 52 above, as if set forth herein in their entirety

54.     Defendant's facility is a place of public accommodation as defined by N.J.S.A. 10:5-5 (NJLAD).

55.     New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.  (*See.* N.J.S.A. 10-5-4).

56.     As a result of the aforementioned disability discrimination, Plaintiff has sustained emotional distress, mental anguish, suffering, humiliation and other injuries in violation of the NJLAD.

   **WHEREFORE,** Plaintiff respectfully requests:

a.  The Court issue a Declaratory Judgment that determines that Defendant at the commencement of the subject lawsuit are in violation of New Jersey Law Against Discrimination (N.J.S.A. 10:5-12).

b.  Injunctive relief against Defendant, including an Order

        (i)  requiring Defendant to make all readily achievable alterations to the Property and to the facility operated thereon so that the Property and such facility are made readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(ii)  requiring Defendant to make reasonable modifications in policies, practices or procedures as are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

(iii)  requiring Defendant to take such steps as are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and

(iv) prohibiting Defendant from perpetuating any acts and practices which result in the exclusion, denial of service to or discriminatory treatment of individuals with disabilities.

c.  An award of compensatory damages in the amount of $1,500.00.

e.  An award of punitive damages in the amount of $50,000.00.

d.  An award of attorneys' fees, costs and litigation expenses.

f.  Such other relief as the Court deems just and proper, and/or is allowable under the NJLAD.

## COUNT V
## RETALIATION - NJLAD

57.    Plaintiff incorporates herein by reference paragraphs 1 through 56 above, as if set forth herein in their entirety

58.    Defendant's facility is a place of public accommodation as defined by N.J.S.A. 10:5-5 (NJLAD).

59.    New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation

without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right. (*See.* N.J.S.A. 10-5-4).

60.     As a result of the aforementioned retaliation, Plaintiff has sustained emotional distress, mental anguish, suffering, humiliation and other injuries in violation of the NJLAD.

**WHEREFORE,** Plaintiff respectfully requests:

a.  The Court issue a Declaratory Judgment that determines that Defendant at the commencement of the subject lawsuit are in violation of New Jersey Law Against Discrimination (N.J.S.A. 10:5-12).

b.  Injunctive relief against Defendant, including an Order

(i)  requiring Defendant to make all readily achievable alterations to the Property and to the facility operated thereon so that the Property and such facility are made readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(ii)  requiring Defendant to make reasonable modifications in policies, practices or procedures as are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

(iii)  requiring Defendant to take such steps as are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and

(iv) prohibiting Defendant from perpetuating any acts and practices which result in the exclusion, denial of service to or discriminatory treatment of individuals with disabilities.

c. An award of compensatory damages in the amount of $1,500.00.

e. An award of punitive damages in the amount of $50,000.00.

d. An award of attorneys' fees, costs and litigation expenses.

f. Such other relief as the Court deems just and proper, and/or is allowable under the NJLAD.

Respectfully Submitted,

GARIBIAN LAW OFFICES, P.C.

By: */s/Antranig Garibian*
    Antranig Garibian, Esq.
    New Jersey Attorney No.: 008492005
    1800 JFK Boulevard, Suite 300
    Philadelphia, PA 19103
    Phone: (215) 326-9179
    Email: ag@garibianlaw.com
    *Attorneys for Plaintiff*

JOHN F. WARD, ESQUIRE, PLLC

By: _____
    John F. Ward, Esquire (I.D. No. 81350)
    329 S. Devon Rd.
    Wayne, PA 19087
    Phone:  610-952-0219
    Fax:  954-237-1990
    johnfward@gmail.com

Date: May 30, 2019